## FRANCIS BLACK v. DRESSELL'S HEIRS.

ADMINISTRATOR, *No Power to Mortgage Lands of Intestate; Such Mortgage Void; Heirs Not Estopped, by Benefits.* D., the head of a family, settled upon a quarter-section of Osage land, intending to enter it, but died before payment and final entry, leaving minor heirs. M. was appointed administrator of the estate, and guardian of the heirs. As administrator he applied for and obtained from the probate court an order to borrow money by mortgage upon this quarter-section, to make the payment. As administrator he executed a note and mortgage to C. for the money which he borrowed and used in entering the land in the name of the heirs. *Held,* That such mortgage was without any legal authority, and void, and that in the absence of any allegation of fraud, misrepresentation, or mistake, no decree of foreclosure could be rendered thereon, and that the heirs were not estopped to plead its invalidity by reason of the benefit resulting to them from the purchase of the land.

### Error from Cowley District Court.

FORECLOSURE of mortgage, brought by *Black* against *Jackson* as administrator *de bonis non* of the estate of Lewis Dressell, deceased. *Ida, Elizabeth, Charles, Eunice, August,* and *Lewis,* minor heirs of said Lewis Dressell, deceased, were joined as co-defendants. Defense was made for the heirs. Trial at October Term 1876 of the district court. The court held that the note and mortgage, which were given by a former administrator of said intestate, were void, and gave judgment in favor of defendants. *Black* brings the case here on error.

*Hackney & McDonald,* for plaintiff.

*J. E. Allen,* for defendants.

The opinion of the court was delivered by

BREWER, J.: Action on a note and mortgage, given by an administrator. Defense, a want of power. The question was raised on demurrer. The facts as stated in the petition are, briefly, that Lewis Dressell settled upon a quarter-section of the Osage lands, the one upon which this mortgage was subsequently given, intending to enter the same; that he died

11—20 KAS.

before making payment and final entry; that Henry Martin was appointed administrator of his estate, March 14th 1872, having been theretofore and in 1871 appointed guardian of the minor heirs; that 1st January 1873 was the last day for payment, and that on December 21st 1872, Martin, as administrator, filed his petition in the probate court asking for an order authorizing him to borrow money upon said quarter-section, and mortgage the same as security therefor; that the probate court made such order, and that said Martin, as administrator and guardian, executed his note and mortgage to one Crapster for $250, and received said sum of money, and with $200 thereof made payment and entered the land for the heirs, and received the final receipt; that the note and mortgage were duly transferred to plaintiff; that Henry Martin deceased, and Addison A. Jackson was appointed administrator *de bonis non;* that the estate of Lewis Dressell was at all times insolvent, and had no property other than this land. A copy of note, mortgage, and receiver's receipt, were attached to and made part of the petition. The note and mortgage are executed solely in the name of Henry Martin, administrator, and in neither is any order of the court recited or referred to. The receiver's receipt reads, "Received from Henry Martin, administrator of the estate of Lewis Dressell, deceased, (for the heirs,)" etc.

That the statute grants no power to an administrator to borrow money upon a mortgage of the real estate of the decedent, is not controverted. Indeed, such an act is foreign to the policy and purpose of administration, which aims to close up, not to continue an estate. And the allegations of the petition, as well as the recitals of the note and mortgage, exclude the idea of any guardian proceedings or attempt to charge the estate of the minors, except as such estate might be affected by administration proceedings on the estate of the ancestor. Impressed with these considerations, the learned counsel for plaintiff fall back upon the gross injustice of permitting the heirs to hold property discharged of any lien for the money borrowed to pay its purchase-price. They

refer to the case of *Maduska v. Thomas*, 6 Kas. 153, 161, in
which this court, criticising the action of an heir attempting
to repudiate a contract of sale made by the ancestor after re-
ceiving full payment from the purchaser, says: "She cannot
hold the money, and also hold the lots.  The law cannot
permit such gross injustice."  If the mortgage be not valid
of itself to cast a specific lien upon the land, yet the circum-
stances of borrowing the money for the purpose of purchas-
ing the land, and its use for that purpose, compel the inter-
position of a court of equity to prevent a wrong.  *Ubi jus,
ibi remedium.*  The owner of the money has parted with it
to enable these heirs to purchase this land.  They have used
it for this purpose.  May they now keep both land and
money?  Doubtless there is great force in this argument, yet
it overlooks certain facts; and the harshness of the result
must not permit us to disregard established rules.  And first,
the money was not borrowed by the heirs, nor by any one in
their name.  Because without request or interference of their
own, the administrator of their father's estate performed an
illegal act, which has resulted to their benefit, are they con-
cluded to dispute it illegally?  In other words, does the mere
fact of benefit received, estop these minors to question the
legality of an act done by a third party, and not at their in-
stance?  For aught that appears, they may have had an
estate of their own, independent of anything descending
from their father, ample enough without mortgage or sale to
have furnished the 'means of purchasing this land, if deemed
by the court for their interest.  There is no pretense of any
fraud or imposition upon the lender of the money, no sug-
gestion that he was in any manner ignorant of the law, of
the invalidity of the mortgage, or the want of authority in
the administrator to charge by loan the estate in his custody.
Can there be any estoppel upon the heirs, when he with full
knowledge of his rights parts with his money to the admin-
istrator?  Concede that he did it for their benefit, can he now
compel them to surrender the benefits of his voluntary act?
Suppose A. were to borrow of B. money to purchase land in

the name and for the benefit of C., would B. have any claim upon C., or any lien upon the land? Clearly not, in the absence of fraud, misrepresentation, mistake, or other like matter of estoppel on C. Is not that this case? Fraud, mistake, misrepresentation, are all excluded. It turns upon the validity of the note and mortgage, and the idea of benefit inuring to the heirs. The note and mortgage, as such, are plainly invalid, and the mere fact of the benefit received will not as we think sustain the action. Reluctantly we are constrained to affirm the judgment.

All the Justices concurring.